Judge Owsley
delivered the opinion of the Court.
Tins case was formerly heard, and decided by this court, and the opinion is reported in Litt. Sel. Cas. 459.
On the return of that opinion and mandate to the court below, the parties agreed to dispense witli a jury, and submit, the case to the court, both law and fact, reserving the same rights which they could have if a jury had been sworn.
The plaintiff gave in evidence the patent as to one undivided third of the land, issued to the legal *479 representatives of Edmund Taylor, and proved that George G. Taylor was his eldest son and heir at law, and then showed a ■ judgment of the circuit court of Clark county, against George Q. Taylor, and several fruitless executions which issued upon the judgment to the sheriff of that county, and then the execution of fieri facias to Greenup county, and •the sale of the land in contest, under that execution to the lessor of the plaintiff, to whom a conveyance of the land was made by the sheriff. It was likewise proved, that George G. Taylor resided in Clarke county long before, and ever since the judgment aforesaid, was obtained against him. The sheriff by whom the land was sold being sworn as a witness, deposed that the defendants resided within the bounds of the patents, and they were living there when he made the sale under the execution, and then claimed the land as their own, adversely to George G. Taylor.
Judgment of the circuit court for defendant, and grounds of the decision.
Sale of land under an execution improperly sent out of the county of the judgment, may pass the title to the purchaser.
The court below, gave judgment for the defendants for the following reasons, as certified by that court:
1st. There was no law which authorized the execution to go from the county of Clarke to that of Greenup, and therefore the purchaser acquired no title by the sheriff’s sale and conveyance.
2d. The land being in the possession of the defendants, adverse to the title of George G. Taylor, at the time of the saje, it was not the subject of execution and sale.
The first of these points has an answer in the ease of Cox vs. Nelson, 1 Monroe, 94, It was, in that case, decided, that an execution though improperly sent out of the county where the judgment was obtained, may pass a good title to- the purchaser under it, especially, if that purchaser be not the plaintiff in the execution. In this case, the purchaser is no party to the record, but a stranger thereto, and of course, according to the case cited, may, notwithstanding the execution went irregularly to the county of Greenup, have acquired a title under the sale and conveyance, by the sheriff.
Question of the liability of lands in adversary possession to sale under ihefieri facias, never heretofore decided.
Lands not subject to sale under execution at common law.
btalule subjects to sale under the fieri facias, lands in possession, remainder, or reverson, but not the interest the debtor may have in lands in adversary possession of others.
The second point has never been decided. We would not be understood to say that no case has ever occurred, in which it might not have been in the potver of the parties to make the question in the court of original jurisdiction; but in no case, hitherto brought before this court, has the point been so presented, as to command an argument from the bar, or an adjudication from the court; so that it must now be treated as a question npt heretofore settled.
In deciding this point, it is proper to premise, that it must turn exclusively, upon the construction of the acts of assembly, subjecting lands to sale under execution, for the payment of debts. It will be recollected, that lands were not subject to sale at common law, under Avrits of execution, and if land, in the adverse possession of others, may now be taken and sold under such writs, it must be owing to some statutary provision.
The first provision contained in the act, that we shall notice, is found in 1 Dig. L. K. 513; and dir rects the money due by the execution, to be made “of the lands, tenements and hereditaments in possession, reversion or remainder,” belonging to the debt- or.
Were these the only expressions contained in the act, which have a bearing upon the question, it. would seem to be a waste of time, to attempt to make them more clear, by any remarks. we could make upon the subject. Lands in the adverse possession of others, cannot possibly, with any propripriety, be said to be lands of the defendant, either in possession, reversion or remainder. Though lands are possessed adversely by others the defendant in whom the title resides, may be said to have an estate or interest, in possession of the land, as Avas held in giving a construction to the Avords used in the statute of wills, in the case of May’s heirs vs. Slaughter, 3 Mar. 505; but it is not, as in the statute of wills, the estate or interest in possession, reversion or remainder, which the defendant has in lands, that is directed by the provision of the act under con *481 sideration, to 1)0 sold, but it is the lands 'which the defendant has in possession, remainder, or reversion.
At the date of the statute subjecting lands to sale under the fieri famas, no sale could be made by the debtor himself of his interest in lands the adversary possession of others, and the act declares the sheriff’s conveyance shall pass only what the defendant might lawfully part with in the land; hence the sheriff cannot sell and convey lands in adversary possession.
But were there any room to doubt as to the import of the expressions contained in the act, and to which reference has been made, that doubt will be removed by adverting to the section of the act which directs the sheriff to convey the title, 1 Dig. L. K. 515. it declares, that the conveyance made by the sheriff as the law directs, “shall be effectual for passing to the purchaser,' all the estate and' interest, which the debtor had, and might lawfully part with in the lands.” Now it should be recollected that at the passage of the act, the common law, and the acts of the Virginia Legislature, made in aid thereof, against selling rights of entry, or choses in action, were in full force in this country. So that in declaring the effect of the conveyance made by the sheriff, the legislature cannot be understood to have intended by the expression, last cited from the act to have authorized the sheriff to sell and convey under execution, land of the debtor which is held adversely by others, and which, by the then existing laws, could not be lawfully sold and conveyed to others, by the debtor. It is true that the holder of title to land, though in the adverse possession of others, might, before and ever since the passage of the act subjecting lands to sale by execution, have parted with the title to the possessor; but it is equally true, that the title could not be lawfully conveyed to any other person except the person in possession, and it Is not to he presumed, that by the expressions “all the estate and interest which the debtor had, and might lawfully part with, in the lands,” the legislature intended to comprehend an interest or estate, which might be parted with by the debtor, to one person only. In a previous section, the money due by the execution is directed to he made “of the lands, tenements, and hereditaments, in possession, reverson or remainder,” and in declaring in a subsequent section, the effect of the sale and conveyance made by the sheriff, the legislature must be understood to have had in view, the description of lands, out of which, the money due by the execution was to be made, and to have intended that the *482 sale and conveyance by the sheriff of such lands, and such only as the debtor had in possession, reversion, or remainder, should be effectual, to pass to the purchaser, all the estate and interest which the debtor had therein, and might lawfully part with.
It seems that where the defendant requests an execution to be directed to anothercounty, to be there levied on lands, his title may be sold, though the land be in adversary-possession.
Statute, passed since the act subjecting lands to Hie fieri facial, authorizing the owners of lands in adversary possession to sell and convey them, docs not authorise the sheriff to sell them under execution.
"We have noticed such of the provisions of the act as in our opinion merit any consideration in arriving at the construction -which should be put upon it, and we are utterly incapable of perceiving any principle by which the act can be interpreted so as to authorize the sale and conveyance of land held adversely by others under execution. There is one other provision in the act which we have omitted, hut which may possibly be thought by some ought not to be passed over in giving a construction to the act- It will be found in 1 Dig. L. K. 514. We would, however, upon that provision, without reciting it, barely remark that it relates exclusively to executions which, by the directions of the defendant are either sent to another county, or levied upon some particular tract of land, and cannot have any influence upon the construction of the other provisions of the act to which we have referred, and which point out the general duties of the sheriff in selling lands under execution.
If we are correct in the construction we have given to the act, the circumstance of the laws concerning champerty and maintenance and which forbid the sale of rights or titles of entry, having so far as respects rights or interests in lands derived from the laws of Virginia, been repealed by an act of the legislature of this country, before the sale under which the plaintiff claims, cannot, we apprehend, affect the present case. After the passage of the repealing act, we admit that the holder of titles to land derived from the land laws‘of Virginia, though the land be in the adverse possession of others, might lawfully sell and part with the title, to any person whatever, and if the act were understood to authorize a sale of any interest which the defendant had in lands, and which he might lawfully part with, it might be a question deserving consideration, whether or not, after the passage of the *483 act repealing the laws concerning champerty, lands in the adverse possession of others, might not be sold and conveyed under execution, though such lands were not liable to sale before the passage of the repealing act. Bat according to the provisions of the act, it is only the interest or estate of lands in possession,, reversion or remainder, and which the defendant might lawfully part with, that is authorized to be sold under execution, so. that notwithstanding the debtor may, since the repealing act, lawfully sell and part with the title to lands derived from the burs of Virginia, whilst the same is possessed adversely by others, yet such lands being neither lands in possession, remainder, or reversion^cannot be taken and sold under execution.
Case of lands held under the debtor’s conveyance? made to defraud his creditors.
But we may be told that the construction which we have put upon the act may, in its practical' operation, tend to shield and protect vendees holding under fraudulent conveyances from debtors. It may be said that after obtaining possession under a fraudulent deed, the possessor holds adversely to all the world, and if land's in the adverse possession of others cannot be sold under execution, it may be contended that the creditor, after such a fraudulent conveyance and. possession taken by the vendee, would be prevented from the collection of' his demand, by execution against the land.
Were such a result admitted'to follow, from the construction we have given to the act, it would form no sufficient reason for departing from the plain and explicit language used by the legislature. It is not our province to make law, or by construction to -defeat the intention- of- the legislature, as clearly expressed. It is for us to ascertain what the law is and to pronounce its mandate, whatever may be the consequence. When acting upon.the subject.,.it was competent for the legislature to subject to execution and sale, whatever interest of the debtor in, land, that to them seemed most expedient and proper;, and though the effect be not as favorable to creditors as it would have been, provided the provisions of the act had gone further, we should transcend our judicial station, were we, by construction, to extend *484 the operation of the act beyond what must, from the language used in the act, have been the intention of its makers. But the consequence alluded to, were it to follow, is by no means of much importance to the interest of creditors. Courts of equity possess ample powers to relieve against deeds of conveyance made with fraudulent intent, and by applying to a court of that sort, the creditor will find no difficulty in having any obstruction which may be thrown into the road of his execution by fraudulent deeds removed.
Lands, lield under the debtor’s conveyance made to defraud bis creditors, may be sold under fieri jarias ajrains' 'liirn, ¡is land in debtor’s possession.
Judgment.
We are not, however, prepared to admit that any such consequence will result to creditors, from the construction that we have given to the act. After possession of land is taken by a person to whom a fraudulent deed is made, we admit that to some purposes the possession will be considered adverse to the vendor as well as others; but deeds which are made with intent to defraud creditors, are by the act against fraudulent conveyances, expressly declared void as to the creditors, so that as respects the proceedings by the creditors to collect their demands, the possession of the fraudulent vendee may properly l)e said to be the possession of the vendor, and the land, therefore, according to our construction of the act, liable to be taken and sold by execution against the vendor.
It results that on the second point, the court below was correct in deciding, that as the land was in the adverse possession of others when the sale was made by the sheriff, under the execution against Taylor, it was not liable to be taken and sold under the execution, that the sale and conveyance to M’Conncll passed no title.
A majority of the court, Judge Mills dissenting, ai’e therefore of opinion, that the judgment must he affirmed with cost.
Judge Mills’ cllsscnl-